**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| RALPH ALEXANDER, *et al.*, | ) | |
| Plaintiffs, | ) | No. 15-2111 |
| v. | ) | Filed: June 26, 2026 |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiffs in this long-running rails-to-trails litigation own land adjacent to a 144-mile former rail line, commonly known as the Rock Island Line, in Missouri. Plaintiffs move for partial summary judgment on the issue of title relating to 10 representative claims that, in Plaintiffs' view, support a finding that the Government is liable for a taking of Plaintiffs' property in connection with the Government's conversion of the rail line to a public recreational trail. The Government cross-moves for partial summary judgment on the same issue for the same claims. The sole question presented to the Court is whether the original source deeds associated with these 10 claims conveyed each relevant land parcel to the railroad in fee simple or whether they merely conveyed easements. For the reasons below, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and the Government's Cross-Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

For purposes of the present motions, the parties do not dispute the underlying facts at issue. *See* Pls.' Mot. for Partial Summ. J. at 4, ECF No. 57; Gov't's Resp. & Cross-Mot. for Partial Summ. J. at 4, ECF No. 58. This opinion presumes the reader's familiarity with the factual

background summarized in the Court's summary judgment opinion and order in the related action

of *Abbott v. United States*, 162 Fed. Cl. 445 (2022), covering claims for the same rail line.

Accordingly, the Court will summarize only the additional background information relevant to

resolution of the question at issue here.

### A.    The Representative Deeds

The parties identify 18 source deeds relevant to determining the property interests that were

originally conveyed to the St. Louis, Kansas City & Colorado Railroad Company ("the Railroad"),

which constructed the rail line in the early 20th century.  *See* Joint App. of Source Deeds at 1–2,

ECF No. 56-1; *see also Abbott*, 162 Fed. Cl. at 450 (describing history of rail line ownership).

Plaintiffs rely on 16 of those deeds to support their claim that the Railroad acquired only easements

for a railroad right of way across, over, and through the relevant parcels.  *See* ECF No. 56-1 at 1–

2; ECF No. 57 at 4–5.  The Government disagrees with Plaintiffs' interpretation of the source

deeds and, in turn, cites two additional deeds as support for its claim that the Railroad acquired fee

simple title.  *See* ECF No. 56-1 at 1–2; ECF No. 58 at 9–10, 13–14.  Descriptions of the source

deeds underlying each claim follow.

### 1.    Deed Underlying Claim 1

Claim 1, brought by Plaintiff Brockman Family Trust, concerns a property parcel in Benton

County identified in the Mehrtens deed (86-91).[1]  *See* ECF No. 56-1 at 1.  That deed, entered into

on August 21, 1901, provides that "the said parties" Jacob and Anna Mehrtens "for and in

---

[1] In their Joint Appendix, the parties provided deed numbers for the deeds underlying Plaintiffs' claims, which the Court includes parenthetically throughout this Opinion and Order. *See* ECF No. 56-1 at 1–2.  Also attached to the Joint Appendix are copies of the source deeds. *See generally* ECF No. 56-2.  Quotes from the deeds come from the parties' joint deed transcriptions. *See generally* ECF No. 61-1.

consideration of Sixty five dollars, to [them] paid by" the Railroad "do by these presents, grant, bargain and sell, convey and confirm, unto" the Railroad "the following described real estate situated in the county of Benton and State of Missouri, to-wit: A strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the railroad of said Company[.]" Source Deed Transcriptions at 2, ECF No. 61-1 (first alteration in original). The deed continues: "And also the right of entry across adjacent land of the undersigned [Mehrtens] for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." *Id.* The deed's habendum clause states that the Mehrtens "will warrant and defend the title to the said premises unto the said party of the second part, and unto its successors and assigns forever, against the lawful claims of all persons whomsoever." *Id.*

    2.    Deeds Underlying Claim 2

Claim 2, also brought by Plaintiff Brockman Family Trust, concerns a nearby property parcel in Benton County. *See* ECF No. 56-1 at 1. Two deeds are relevant here: the Meier deed (84-370) and Meyer deed (86-157). *See id.* The Meier deed, recorded in probate court on October 4, 1902, Copies of Source Deeds at 5, ECF No. 56-2, evinces a conveyance on May 12, 1902, by John Meier on behalf of William and Otto Meier, two minors ("the Meier minors"), of "all the right, title and interest" of the Meier minors to the Railroad "[i]n consideration of the premises, and of the said sum of Forty four Dollars and forty five Cents." ECF No. 61-1 at 4. That title was "described, as follows: The undivided 2/8 interest in a strip of land one hundred feet wide and having a uniform width of fifty feet on each side of the center line" of the railroad "for right of way purposes." *Id.* The deed's habendum clause provides that the Railroad would hold such privileges and appurtenances "forever." *Id.*

The Meyer deed, acknowledged on August 16, 1902, *see* ECF No. 56-2 at 7, covers the same parcel of land and states that the Meyer parties "for and in consideration of One Hundred and Fifty five . . . dollars [and 55 cents] . . . do by these presents, grant, bargain and sell, convey and confirm, unto" the Railroad "the following described real estate": "A strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the railroad of said company." ECF No. 61-1 at 6. The parties to the deed agreed that "[t]his deed is made in lieu of all other right of way deeds made between said parties before this time." *Id.*

3.    Deeds Underlying Claim 3

Claim 3, brought by Plaintiff Hartsfield Revocable Trust, concerns a property parcel in Franklin County that is the subject of four deeds. ECF No. 56-1 at 1. The Roller deed (30-509), executed on August 31, 1886; Booth deed (53-609), entered into on February 25, 1901; Whitlock deed (53-354), dated September 13, 1900; and Fischer deed (53-349), signed on September 12, 1900, all convey some property interest in the underlying parcel. *See id.*; ECF No. 61-1 at 8–14. The Roller deed confirms that Jacob and Eliza Roller intended to "grant, bargain and sell, convey and confirm, unto" the Railroad "all that piece or parcel of land having a strip of land one hundred [100] feet in width" in "consideration of 15 dollars and the building[,] maintaining[,] and operating of a Railroad." ECF No. 61-1 at 8 (first alteration in original). The deed continues: "And the [Rollers] agree further that the Railroad Company . . . may be allowed to encroach upon the adjoining lands outside of the limit above mentioned, over which the [Rollers] have title, for the purpose of completing its cuts and fills or for any purpose of drainage or change of channel during construction" for as long as the company maintained and operated its railroad. *Id.* The parties "expressly . . . agreed, however, that the title in fee simple acquired by [the Railroad] shall be confined to the strip of land first above mentioned." *Id.*

The Booth, Whitlock, and Fischer deeds each contain a primary conveyance and a secondary conveyance. In each of the three deeds, the primary conveyance of the land underlying the main rail line is described as the grantor's "undivided . . . interest in a strip of land," without further qualification. *Id.* at 10 (Booth deed); *see also id.* at 12 (Whitlock deed); *id.* at 14 (Fischer deed). The secondary conveyances in each of the deeds grant "also a strip of land fifty (50) feet wide . . . adjacent to the foregoing described right of way, to be used for extra [right] of way." *Id.* at 10 (Booth deed); *see also id.* at 12 (Whitlock deed); *id.* at 14 (Fischer deed).

### 4. Deed Underlying Claim 4

Claim 4, brought by Plaintiffs Wade and Heather Eberlin, concerns a property parcel in Franklin County identified in the Brinkmeyer deed (53-293). *See* ECF No. 56-1 at 1. The deed, entered into on August 18, 1900, provides that William and Mary Brinkmeyer intended, "for and in consideration of Seventy five Dollars, . . . [to] grant, bargain and sell, convey and confirm unto" the Railroad "the following described real estate": "A strip of land one hundred (100) feet in width having a uniform width of fifty (50) feet on each side of the centre line of the railroad." ECF No. 61-1 at 16. The Brinkmeyers further conveyed "also the additional right of way as follows": "A strip of land fifty (50) feet wide on the south side of the above described right of way and adjacent thereto[.]" *Id.* The deed contains a standard habendum clause assigning all rights, immunities, privileges, and appurtenances of the property parcel to the Railroad "forever." *Id.*

### 5. Deed Underlying Claim 5

Claim 5, brought by Plaintiffs Darryl and Kathryn Harms, concerns a property parcel in Benton County identified in the Intelmann deed (86-168). *See* ECF No. 56-1 at 1. The deed, entered into on June 30, 1902, provides that Jurgen Intelmann intended, "for and in consideration of Five Hundred ten Dollars, . . . [to] grant, bargain and sell, convey and confirm, unto" the

Railroad "the following described real estate": "A strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the railroad." ECF No. 61-1 at 18. The deed conveyed an additional interest: "a strip fifty feet [wide] on each side and adjacent to the right of way aforesaid" for "the purpose of cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described aforesaid." *Id.* (alteration in original). The deed contains a standard habendum clause. *See id.*

6.    Deeds Underlying Claim 6

Claim 6, brought by Plaintiffs Gary and Donna Kranz, concerns a property parcel in Benton County that is the subject of three deeds: the Inselman deed (86-29), Inselmann deed (84-600), and Bockelman deed (88-87). *See* ECF No. 56-1 at 1. The Inselman deed, entered into on August 20, 1901, confirms that Jost Inselman intended, "in consideration of Ten Dollars," to "grant, bargain and sell, convey and confirm, unto" the Railroad "the following described Real Estate": "A strip of land one hundred (100) feet wide having a uniform width of fifty (50) feet on each side of the center line of the railroad of said Company[.]" ECF No. 61-1 at 20. Mr. Inselman conveyed "also the right of entry across adjacent land of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." *Id.* The deed contains a standard habendum clause. *See id.*

The Inselmann deed, recorded on April 7, 1903, provides that Jost Inselmann and his wife did, "in consideration of the sum of One Hundred and Seventy-Two & 25/100 ($172.25) Dollars," "grant, bargain, sell, convey and confirm unto" the Railroad "[a] strip of land one hundred and fifty [150] feet wide on the south side of and parallel with the right of way of the route and line" of the Railroad. *Id.* at 22 (second alteration in original). The Inselmanns also conveyed "a strip of land fifty [50] feet wide on the North side of and parallel with [and] adjacent to the right of way

6

of the route and line of the railroad right of way[.]"  *Id.* (first and second alterations in original). The habendum clause indicates that the Inselmanns did "hereby covenant, promise and agree" that, at the time of the sale, the Inselmanns were "lawfully seized in their own right, of an absolute and indefeasible estate of inheritance in fee simple" of the described parcel.  *Id.*

The Bockelman deed, entered into on May 21, 1903, confirms that Peter and Dina Bockelman intended to "grant, bargain, sell, convey and confirm unto" the Railroad "[a] strip of land one hundred and fifty [150] feet wide parallel with, adjacent to and on the South side of the right of way of the route and line of" the Railroad.  *Id.* at 24 (second alteration in original).  The Bockelmans further conveyed "a strip of land fifty feet [50] wide on the North side . . . parallel with and adjacent to the right of way of the railroad;" "2 strips of land 30 feet wide parallel with and adjacent to the right of way of said railroad," one on the north side and one on the south side; and "one strip of land 30 ft wide parallel with and adjacent to the right of way of said railroad" on the north side.  *Id.* (alteration in original).  Like the Inselmann deed, the Bockelman deed warranted in the habendum clause that, at the time of the conveyance, the Bockelmans were "lawfully seized in their own right, of an absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted and described premises."  *Id.*

7.    Deeds Underlying Claim 7

Claim 7, brought by Plaintiffs Lyle and Linda Browning, concerns a property parcel in Benton County that is the subject of two deeds: the first Willis deed (86-159) and second Willis deed (86-243).  *See* ECF No. 56-1 at 1.  The first Willis deed, entered into on July 25, 1902, confirms that, for "Three Hundred and Ninety Dollars," J.W. and M.L. Willis did "grant, bargain and sell, convey and confirm unto" the Railroad "[a] strip of land one hundred (100) feet wide,

having a uniform width of fifty (50) feet on each side of the center line of the railroad." ECF No. 61-1 at 26. The deed contains a standard habendum clause. *See id.*

The second Willis deed, entered into on September 2, 1902, provides that J.W. and M.L. Willis intended to "grant, bargain and sell, convey and confirm" to the Railroad an interest in land alongside the strip conveyed in the first Willis deed. *Id.* at 28. Specifically, the deed characterizes the main rail line—the land identified in the first Willis deed—as "the right of way of the St. L., K.C. & Colo. RR." *Id.* The two strips of land conveyed in the second Willis deed are each identified with respect to their location and adjacency to the Railroad's right of way. *Id.* ("A strip of land . . . joining the North side of the right of way of the [Railroad] at about station 2469 thence Southeast along said right of way . . . and a strip of land on the South side of said right of way . . . ."). The deed also conveyed "for the purpose of cuttings and embankments necessary for the proper construction and security of said railroad" an interest in "such additional strips or parcels of land as may be necessary for that purpose." *Id.* The deed contains a standard habendum clause. *See id.*

### 8.    Deed Underlying Claim 8

Claim 8, brought by Plaintiffs Clyde and Emma Zelch, concerns a property parcel in Gasconade County that is the subject of the Idel deed (25-632). *See* ECF No. 56-1 at 1. The Idel deed, entered into on October 20, 1900, provides that Philip, Wilhelmena, William, and August Idel, "for and in consideration of Two Hundred Dollars," did "grant, bargain and sell, convey and confirm unto" the Railroad "the following described real estate": "A strip of land one hundred (100) feet wide having a uniform width of fifty (50) feet wide on each [side] of the center line of the Railroad." ECF No. 61-1 at 30 (alteration in original). The deed notes that August Idel "join[ed] in this deed for the purpose of releasing the above described right of way from [the] Deed

8

of Trust held by him on above described tracts of land." *Id.* (second alteration in original). The deed contains a standard habendum clause. *See id.*

9.    Deed Underlying Claim 9

Claim 9, brought by Plaintiffs James and Delores Walker, concerns a property parcel in Gasconade County that is the subject of the Diestelkamp deed (27-40). *See* ECF No. 56-1 at 1. The Diestelkamp deed, entered into on November 28, 1900, confirms that Henry and Lydia Diestelkamp, "for and in consideration of One Hundred and Twenty Five Dollars," did "grant, bargain and sell, convey and confirm unto" the Railroad "[a] strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the Railroad." ECF No. 61-1 at 32. The document further provides that "[t]his deed is intended to take place of former deed of right of way, executed by said Henry Diestelkamp and wife to said Railroad Company, made in 1888." *Id.* The deed contains a standard habendum clause. *See id.*

10.    Deeds Underlying Claim 10

Claim 10, brought by Plaintiff Doris Moore, concerns a property parcel in Cole County that is the subject of two deeds: the Holzer deed (24-462) and Hoskins deed (24-461). *See* ECF No. 56-1 at 2. The Holzer deed, entered into on June 19, 1901, provides that John and Mary Holzer, for "Seventy five Dollars," did "grant, bargain and sell, convey and confirm unto" the Railroad "[a] strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the railroad." ECF No. 61-1 at 34. The deed continues: "The grantors further convey the right of way across a strip of land [25] [feet] wide . . . or so much of the same as is required as the road is now located." *Id.* (first alteration in original). "And," the deed states, "for the purpose of cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described aforesaid, such additional strips or

9

parcels of land as may be necessary for that purpose[.]" *Id.* The Holzers further conveyed "also the right of entry across adjacent lands of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." *Id.* The deed contains a standard habendum clause. *See id.*

The Hoskins deed contains similar language. Entered into on July 12, 1901, the deed confirms that T.J. and Ann Hoskins conveyed, for "eight hundred and twenty five dollars," "[a] strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the railroad[.]" *Id.* at 36. The Hoskins further conveyed "also the right of entry across adjacent land of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." *Id.* The deed contains a standard habendum clause. *See id.*

### B.    Procedural History

Plaintiffs filed their original Complaint on March 2, 2015, as part of the *Abbott* case. *See* Pls.' Compl., *Abbott v. United States*, No. 15-211, ECF No. 1. The Complaint was subsequently amended three times. *See* Pls.' Am. Compl., *Abbott* ECF No. 7; Pls.' Second Am. Compl., *Abbott* ECF No. 14; Pls.' Third Am. Compl., *Abbott* ECF No. 27. Following a change of counsel, the Court severed Plaintiffs from *Abbott* into this separate action, Order to Sever Pls. and Claims, *Abbott* ECF No. 94, although the operative complaint as to Plaintiffs remains docketed in the *Abbott* case. The Court resolved cross-motions for partial summary judgment in *Abbott* on September 28, 2022, holding that (1) disputed issues of fact precluded judgment on some claims, *see* 162 Fed. Cl. at 458–59; (2) the bulk of deeds at issue conveyed easements to the Railroad, in part because some deeds conveyed interests "for right of way," *id.* at 459–62; (3) the Railroad's easements did not contemplate trail use under Missouri law, *see id.* at 463–67; and (4) the

Government conceded that the *Abbott* plaintiffs were entitled to summary judgment on certain claims, *see id.* at 467.

Plaintiffs in this case proceeded separately, first conferring in an attempt to resolve the issue of liability without the Court's intervention. *See, e.g.*, Aug. 2021 Joint Status Report at 1, ECF No. 17; Mar. 2022 Joint Status Report at 1, ECF No. 24; Nov. 2024 Joint Status Report at 1, ECF No. 51. On February 4, 2025, the parties indicated that, while they had reached agreement on the liability question for a substantial number of claims, they planned to seek summary judgment on more than 100 claims as to the threshold issue of whether the source deeds underlying the claims conveyed easements or fee simple ownership to the Railroad. *See* Feb. 2025 Joint Status Report at 1–2, ECF No. 54. Plaintiffs filed their Motion for Partial Summary Judgment on March 4, 2025, *see* ECF No. 57, and the Government responded and filed a Cross-Motion for Partial Summary Judgment on April 1, 2025, *see* ECF No. 58. As noted above, the parties agree that the Court's summary judgment opinion in *Abbott* governs the factual and legal landscape at issue in this related litigation. *See* ECF No. 57 at 4; ECF No. 58 at 4. The motions are ripe for resolution.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

This Court must grant judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the United States Court of Federal Claims. A "material" fact is a fact that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute exists when a factfinder could reasonably resolve the dispute "in favor of either party." *Id.* at 250. Where parties cross-move for summary judgment, "each motion is evaluated on its own

merits and reasonable inferences are resolved against the party whose motion is being considered." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968–69 (Fed. Cir. 2009).

### B.    Rails-to-Trails Takings

"It is settled law that a Fifth Amendment taking occurs in Rails-to-Trails cases when government action destroys state-defined property rights by converting a railway easement to a recreational trail, if trail use is outside the scope of the original railway easement." *Ladd v. United States*, 630 F.3d 1015, 1019 (Fed. Cir. 2010).  The "threshold question" that the Court must answer in such cases is "whether the claimant has a compensable property interest in the land allegedly taken."  *Chi. Coating Co., LLC v. United States*, 892 F.3d 1164, 1167 (Fed. Cir. 2018) (citing *Preseault v. Interstate Com. Comm'n* (*Preseault I*), 494 U.S. 1, 16 (1990)).  That question is "often answered by analyzing the original deeds that conveyed the property to the railroad."  *Id.*

Rails-to-trails cases proceed according to a well-trodden analytical path: (1) the Court must determine "who owns the strip of land involved," which requires determining whether the railroad originally acquired only an easement or obtained a fee simple estate; (2) "if the railroad acquired only an easement," the Court then determines whether the terms of the easement were limited only to railroad purposes or whether the easement might include future use like a public recreational trail; and (3) if the easement was broad enough to include trail use, the Court finally considers whether the easement "terminated prior to the alleged taking so that the property owner at the time held a fee simple unencumbered by the easement." *Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States* (*Preseault II*), 100 F.3d 1525, 1533 (Fed. Cir. 1996)).

The determination of whether the initial transfer conveyed merely an easement or a fee simple interest requires looking to state law, which "creates and defines the scope of the

12

reversionary or other real property interests." *Preseault I*, 494 U.S. at 20 (O'Connor, J., concurring); *see also Preseault II*, 100 F.3d at 1534–40 (relying on state law to determine what interests were conveyed by the transfers at issue). The parties here agree that the only question for the Court to decide at this stage is the first step of the analysis: whether the cited deeds transferred fee simple or easement interests to the Railroad. *See* ECF No. 57 at 4; ECF No. 58 at 4. Because all the relevant property is located in Missouri, Missouri state law governs. *See Abbott*, 162 Fed. Cl. at 456.

### C.      Missouri Law

In Missouri, "[r]ailroads may hold, purchase, or convey the fee in land." *Schuermann Enters., Inc. v. St. Louis Cnty.*, 436 S.W.2d 666, 668 (Mo. 1969). "[F]or a deed to convey fee interest to a railroad the language in the deed must be clear." *Moore v. United States* (*Dorothy Moore*), 58 Fed. Cl. 134, 136 (2003). A fee simple transfer is clearly intended "when the acquisition is by general warranty deed," "for a valuable consideration," and "without any restriction on the quantum of title conveyed." *Schuermann*, 436 S.W.2d at 668; *see also Nigro v. Ashley*, 690 S.W.2d 410, 417 (Mo. Ct. App. 1984) (citing *Schuermann* for the "elements" that "must appear" for a deed to convey fee simple title to the railroad).

"Missouri courts have long favored interpreting grants to railroad companies as easements," rather than fee simple estates. *Dorothy Moore*, 58 Fed. Cl. at 136 (collecting cases). Thus, if the railroad's "acquisition is for right of way only, whether by condemnation, voluntary grant or conveyance in fee upon a valuable consideration, the railroad takes only an easement over the land and not the fee." *Schuermann*, 436 S.W.2d at 668 (citing *Brown v. Weare*, 152 S.W.2d 649, 652 (Mo. 1941)); *see also G.M. Morris Boat Co. v. Bishop*, 631 S.W.2d 84, 88 (Mo. Ct. App. 1982) ("[T]he expression or limitation of the use to which the property is to be put is a decisive

factor in determining if [the conveyance] is an easement or the grant of a fee.").  The use of the term "[r]ight of way" in a deed is not alone dispositive; the phrase "has been accorded two meanings in railroad parlance–the strip of land upon which the tract is laid [] and the legal right to use such strip."  *Schuermann*, 436 S.W.2d at 669.  "[W]here the interest conveyed is limited *to right of way* or *for right of way*," the Missouri Supreme Court has held that "the estate conveyed is an easement only."  *Id.* (emphases added).

Accordingly, "Missouri courts will look to three factors to determine whether a deed passes title to a railroad in fee simple or merely grants a railroad an easement: '(1) whether the deed includes language conveying a "right of way;" (2) the amount of consideration; and (3) language in the deed limiting the use of the land for railroad purposes.'"  *Abbott*, 162 Fed. Cl. at 457 (first quoting *Moore v. Mo. Friends of Wabash Trace Nature Trail, Inc.* (*Danny Moore*), 991 S.W.2d 681, 685–86 (Mo. Ct. App. 1999) (footnote omitted); and then citing *Nigro*, 690 S.W.2d at 417).

In determining a property interest's scope, Missouri courts look to "the deed by which title is transferred," *Nigro*, 690 S.W.2d at 417, "to ascertain the intention of the parties," *Hinshaw v. M-C-M Props., LLC*, 450 S.W.3d 823, 827 (Mo. Ct. App. 2014).  In doing so, the Court must consider "all the words of the deed within its four corners."  *Lloyd v. Garren*, 366 S.W.2d 341, 345 (Mo. 1963).  If the deed "shows on its face that it includes the entire agreement and expresses all the obligations assumed by the parties thereto," then "in the absence of fraud or mistake, parol evidence is not admissible to add to, vary, modify, or contradict the terms of the written contract."  *J.B. Colt Co. v. Gregor*, 44 S.W.2d 2, 6 (Mo. 1931); *see also Cravens v. Jolly*, 623 S.W.2d 569, 571 (Mo. Ct. App. 1981) (applying the parol evidence rule to exclude testimonial evidence of a grantor's intent in using a warranty deed to convey land).

14

### III.  DISCUSSION

The parties agree that each cited deed states valuable consideration and includes language indicative of a fee simple conveyance (*e.g.*, "grant, bargain and sell, convey and confirm").  The primary dispute is whether the deeds' inclusion of the phrases "right of way" or "right of entry" constitutes a limitation on the use of the land at issue such that the interest conveyed to the Railroad was only an easement.  Plaintiffs argue that this Court's decision in *Abbott* stands for the proposition that any inclusion of the phrase "right of way" in a deed to a railroad is dispositive evidence of an easement.  *See* ECF No. 57 at 6; *id.* at 4–5 (including a table identifying how the deeds use the phrase "right of way").  Because the relevant deeds presented for the 10 claims include such references, Plaintiffs contend that they all convey easements.  *See id.*  The Government responds that, per *Abbott* and other Court of Federal Claims opinions, references to the phrase "right of way" can either describe the strip of land being conveyed in fee *or* limit the quantum of title conveyed, depending on the context of the reference.  *See* ECF No. 58 at 6–7; Gov't's Reply at 2, ECF No. 60.  According to the Government, all 10 claims at issue involve deeds falling into the first category.  *See* ECF No. 58 at 6–7.  The Government has the better reading of the case law, with exceptions noted below, but the Court does not agree with the Government's application of the law to all the deeds at issue.  The Court takes each claim in turn.

A.     **The Primary Conveyance of the Deed Underlying Claim 1 Was for Fee Simple Title.**

As this Court previously held in *Abbott*, where a secondary conveyance refers to the primary conveyance as a "right of way," or where the deed refers to the secondary conveyance as being "*for extra* right of way," the language limits the quantum of title primarily conveyed.  162 Fed. Cl. at 461–62 (emphasis in original).  Plaintiffs attempt to extend that holding to the Mehrtens

deed (86-91), but the deed shares no similar indicia that the grantors intended to convey merely an easement in the primary conveyance.

The Mehrtens deed primarily conveyed "[a] strip of land one hundred (100) feet wide." ECF No. 61-1 at 2. The primary conveyance contains no reference to "right of way." *See id.* The deed then describes a secondary conveyance: "And also the right of entry across adjacent land of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." *Id.* The parties do not dispute that the secondary conveyance is an easement. *See* ECF No. 57 at 7; ECF No. 58 at 7. Rather, Plaintiffs argue that the use of the word "also" indicates that the quantum of title of the primary interest conveyed must have the same scope as the secondary interest conveyed. *See* ECF No. 57 at 7. In Plaintiffs' view, the plain meaning of "also" clearly confirms that the grantor intended to grant a secondary easement "in addition" to an easement granted in the primary conveyance. *See id.* (emphasis omitted). But Plaintiffs provide no support for why the word "also" indicates that the purpose-limiting language in the secondary conveyance—*i.e.*, "right of entry" and "for purpose of construction of said railroad"—should also apply to the primary conveyance.

Indeed, the Court takes the opposite reading. Using the word "also" to introduce the secondary conveyance makes clear that the secondary conveyance describes an interest "in addition" to—and, correspondingly, independent from—the primary interest conveyed. *See Also*, *Oxford English Dictionary*, https://www.oed.com/dictionary/also_adv (last visited June 23, 2026) (third definition, in use from the year 1200 A.D. to present). The word "also" differs from "extra," which as the Court found in *Abbott*, impliedly refers back to the primary conveyance as being a transfer of the same type of property interest. *See* 162 Fed. Cl. at 461–62; *see also Extra*, *Oxford English Dictionary*, https://www.oed.com/dictionary/extra_adj (last visited June 23, 2026)

16

(defining the word to mean "[b]eyond or more than the usual, stipulated, or specified amount or number; additional," *i.e.*, modifying a "specified amount or number" with more of the same). Because the primary conveyance in the Mehrtens deed neither limits itself to a "right of way" nor includes any purpose-limiting language, it conveyed fee simple title to the 100-foot strip of land. *See Abbott*, 162 Fed. Cl. at 457; *Brown*, 152 S.W.2d at 652; *Schuermann*, 436 S.W.2d at 668.  The reference to "right of entry" in the second conveyance does not alter that conclusion.

Accordingly, the Court grants the Government's request for partial summary judgment on Claim 1.  It denies Plaintiffs' corresponding partial summary judgment request, except the Court holds that the second conveyance in the Mehrtens deed grants an easement.[2]

B.    **The Later Deed Underlying Claim 2 Conveyed Fee Simple Title and Replaced the Earlier Easement Deed.**

The parties agree that the Meier deed (84-370) conveyed an easement to the Railroad by granting an "interest in a strip of land one hundred feet wide and having a uniform width of fifty feet on each side of the center line of the Railroad . . . for right of way purposes."  ECF No. 61-1 at 4; *see* ECF No. 57 at 8; ECF No. 58 at 8.  The dispute centers on the later Meyer deed (86-157),

---

[2] Plaintiffs urge the Court to make holdings with respect to any secondary conveyances that granted easements to the Railroad, claiming that they could be relevant "[t]o the extent *any* portion of the recreational trail encroaches on the secondary easement."  ECF No. 59 at 6 n.1 (emphasis in original).  Plaintiffs accuse the Government of failing to provide "any evidence to demonstrate that is *not* the case," *id.* (emphasis in original); however, Plaintiffs do not provide any evidence to show that *is* the case.  Per the operative complaint, the alleged taking at issue pertains to the "abandoned railroad right-of-way" subject to the Surface Transportation Board's Notice of Interim Trail Use order.  *Abbott* ECF No. 27 ¶¶ 16, 21.  That order only applies to a 144.3-mile segment of the railroad corridor.  Pls.' Third Am. Compl., Ex. 14 at 8, *Abbott* ECF No. 27-5.  It is unclear to the Court whether any secondary conveyances in the deeds at issue (primarily for sidetrack) comprise land underlying the rail line that was converted to trail use.  Additionally, the question of the interest transferred by many of the secondary conveyances in the deeds at issue is not disputed.  In any event, as a matter of efficiency in case a need arises in the future, the Court will issue holdings per Plaintiffs' request.

which conveyed "[a] strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the railroad." ECF No. 61-1 at 6. This subsequent deed expressly stated that it was "made in lieu of all other right of way deeds made between said parties before this time." *Id.*

Plaintiffs argue that use of the term "in lieu of" illustrates that the grantor intended to "*substitute* rather than *eliminate* that prior right of way deed granting an easement." ECF No. 57 at 8 (emphases in original). In other words, the later deed is also a right of way deed. Viewing the later deed as a substitution, however, does not demonstrate that it continues to incorporate the purpose-limiting language of the prior right of way deed. Unlike in the earlier deed, the description of the property interest conveyed in the second deed does not mention "right of way" or limit the conveyance to "right of way" or "for right of way." ECF No. 61-1 at 6; *see Abbott*, 162 Fed. Cl. at 457, 463; *Schuermann*, 436 S.W.2d at 668. It merely describes a strip of land and provides the geographical boundaries of that strip. *See* ECF No. 61-1 at 6. The reference to "all other right of way deeds"—*i.e.*, *prior* deeds—cannot itself be construed to limit the quantum of title contained in *this* deed.

Instead, the deeds together demonstrate that in May 1902 the Meier minors (through their guardian and curator, John Meier) conveyed to the Railroad an easement over their partial undivided interest in the strip of land at issue, whereas in August 1902 several grantors (including John Meyer) conveyed the same strip of land in fee simple to the Railroad. *Id.* at 4, 6. As the Government points out, Missouri law dictates that when a "greater estate and a lesser [estate] coincide and meet in one and the same person, in one and the same right," the lesser estate merges into the greater estate. ECF No. 58 at 9 (quoting *Curry v. La Fon*, 113 S.W. 246, 250 (Mo. Ct. App. 1908)); *see also St. Charles Cnty. v. Laclede Gas Co.*, 356 S.W.3d 137, 141 (Mo. 2011) (the

18

doctrine of merger applies where there is "unity of title and unity of possession"); *Morgan v. York*, 91 S.W.2d 244, 247 (Mo. Ct. App. 1936) (explaining that "where the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity" (quoting *Dent v. Matthews*, 213 S.W. 141, 143 (Mo. Ct. App. 1919))).  In this context, using "in lieu of" means, as the Government argues, that the Meyer deed (86-157) subsumed or overrode the Meier deed (84-370), thus resulting in a merger of an earlier easement interest and later fee simple interest.[3]  *See* ECF No. 58 at 9.

Accordingly, the Court grants the Government's request for partial summary judgment on Claim 2 and denies Plaintiffs' corresponding partial summary judgment request.

### C.  Three of the Deeds Underlying Claim 3 Conveyed Easements, and One Conveyed a Fee Interest.

The parties do not dispute the legal interpretation of each of the four deeds related to Claim 3.  Plaintiffs argue that three deeds—the Booth deed (53-609), Whitlock deed (53-354), and Fischer deed (53-349)—conveyed easements.  *See* ECF No. 57 at 9.  The Government agrees for the purposes of these motions that, under *Abbott*, these deeds all conveyed easements in both the primary and secondary conveyances.  *See* ECF No. 58 at 9; *see also Abbott*, 162 Fed. Cl. at 461–62 (determining that a secondary conveyance "for *extra* right of way" is indicative of the property interest conveyed in the primary conveyance).  Instead, the Government argues that an earlier deed—the Roller deed (30-509)—governs the claim.  *See* ECF No. 58 at 9–10; ECF No. 60 at 6 (clarifying that the Government seeks summary judgment only on the land underlying the Roller

---

[3] To the extent that Plaintiffs appear to argue that the deeds cover two different tracts of land, *see* ECF No. 59 at 7, their argument fails for two reasons: (1) the geographic descriptions of the land are the same, *compare* ECF No. 61-1 at 4 (deed 84-370), *with id.* at 6 (deed 86-157); and (2) as Plaintiffs themselves argue, the conveyance in the second deed was plainly intended to replace the conveyance in the first deed.

deed).  As Plaintiffs appear to concede, *see* Pls.' Resp. & Reply at 8–9, ECF No. 59, that deed clearly conveyed a strip of land to the Railroad in fee simple, *see* ECF No. 61-1 at 8 (conveying "all that piece or parcel of land having a strip of land" and confirming "that the title in fee simple acquired by" the Railroad "shall be confined to [that] strip of land").

The parties appear to dispute, however, exactly which land parcel(s) each deed covers.[4] *See* ECF No. 59 at 8–9 (arguing that the Government has failed to show that "where a railroad acquires a fee simple interest over one parcel but only easements over three *adjacent* parcels" the railroad has acquired fee simple title over all parcels (emphasis added)); ECF No. 60 at 6 n.3 (arguing that the deeds, at a minimum, overlap).  Upon review, the Court agrees that the parcels pertaining to the railroad corridor, as identified in the deeds, may overlap.  The 100-foot strip of land in the Roller deed is broadly identified as being situated in, among other locations, "section thirty one Township forty three Range three [31-43-3] west . . . having an equal and uniform width of fifty feet on each side of the center line of said Railroad as it shall be located."  ECF No. 61-1 at 8 (alteration in original).  The 100-foot strip of land in the other deeds is also located in "Section thirty one (31) Township forty three (43) Range three (3) West" where the rail line "is now located," but they specifically state that the strip of land is "[t]he West half (1/2) of the South East quarter (1/4)[,] [a]nd Lot One (1) of the South West quarter (1/4)" of the identified section.  *Id.* at 10 (Booth deed); *see also id.* at 12 (Whitlock deed); *id.* at 14 (Fischer deed).  Thus, the parties have failed to carry their respective burdens to show an absence of a genuine dispute of material fact with respect to the boundaries of the land identified in each deed under this claim—*i.e.*, that

---

[4] The parties jointly identify all four deeds as relevant to determining the ownership of property parcel number 15-9-31.0-0-000-022.000.  *See* ECF No. 56-1 at 1.

20

all four deeds either do or do not cover the exact same parcel(s) of land underlying the railroad corridor.

To be clear, the Roller deed conveyed a fee interest in the 100-foot strip of land identified in that deed, and the remaining three deeds conveyed easements for the rail line. To the extent the tract primarily conveyed in the Roller deed overlaps with the tracts primarily conveyed in the other three deeds, the other three deeds—all later in time—have no effect on the quantum of interest previously conveyed. Simply put, if the Railroad already acquired the greater estate in the 100-foot strip of land, then there was no lesser interest in that tract to be conveyed to the Railroad by the Booth, Whitlock, and Fischer deeds. It is true, however, that the three later deeds each include a conveyance pertaining to additional land beyond the 100-foot strip—*i.e.*, a 50-foot strip of land "on the South side of and adjacent to" the 100-foot rail line. *Id.* at 10 (Booth deed); *see also id.* at 12 (Whitlock deed); *id.* at 14 (Fischer deed). As to that additional land, the Roller deed has no effect and there is no dispute that the interest in the 50-foot strip conveyed was merely an easement. *See* ECF No. 57 at 9; ECF No. 60 at 6.

The existence of a genuine dispute of material fact—exactly what tract of land each deed covers and whether the land is partially or entirely coextensive—prevents summary judgment on this claim. Accordingly, though the Court makes the above holdings regarding the property interests granted by the conveyances, the Court denies each party's request for partial summary judgment on Claim 3.

### D.    The Deed Underlying Claim 4 Conveyed an Easement.

The Brinkmeyer deed, at issue in Claim 4, conveyed "[a] strip of land one hundred (100) feet [wide]." ECF No. 61-1 at 16. This primary conveyance does not mention a "right of way." The deed further includes a second conveyance: "and also the additional right of way as follows."

21

*Id.* (describing a 50-foot strip of land on the south side and adjacent to the strip conveyed for the rail line).  In conveying the second interest, the deed also refers to the primary conveyance of the 100-foot strip of land as "the above described right of way."  *Id.*  Like the relevant deeds in *Abbott*, the Court finds that the primary and secondary conveyances in the Brinkmeyer deed grant easements.

Taking the conveyances in reverse order, the Government is mistaken when it argues that the secondary conveyance of "additional right of way" was in fee simple because such phrase lacks the purpose-limiting word "for" to indicate that the conveyance was restricted to a specific purpose.  *See* ECF No. 58 at 10–11.  In Missouri, use of the phrase "for right of way" in a deed to a railroad clearly limits its use of the property to railroad purposes and thus conveys only an easement.  *See Schuermann*, 436 S.W.2d at 668 (citing *Brown*, 152 S.W.2d at 652).  Missouri case law, however, also considers "whether the deed includes language conveying a 'right of way.'" *Abbott*, 162 Fed. Cl. at 457 (quoting *Danny Moore*, 991 S.W.2d at 685–86).  The Court's extensive review of Missouri appellate court decisions (in connection with both the instant matter and *Abbott*) reveals that, in determining whether a deed conveyed a right of way, Missouri courts look to whether the land conveyed is described or referred to in the deed as a "right of way."[5]

---

[5] Although the Government relies on decisions of other Court of Federal Claims judges to support its contention that the "right of way" references in this and other deeds are merely descriptive and not interest-limiting, *see* ECF No. 58 at 6–7 (citing *Hubbert v. United States*, 58 Fed. Cl. 613, 615–16 (2003); *Bacon v. United States*, 174 Fed. Cl. 780, 788–90 (2025); *Henley v. United States*, No. 22-1716, 2024 WL 4719154, at *5 (Fed. Cl. Nov. 7, 2024)), these decisions fail to address the Missouri cases that considered similar references to be limitations on the interest conveyed—not a mere description of the land.  Nor do these decisions cite (and the Court is unable to find) any case in which *a Missouri court* held that a deed to a railroad referring to the land as a "right of way" conveyed fee simple title.  In rails-to-trails cases, courts are obliged to "analyze the property rights of the parties . . . under the relevant state's law."  *Castillo v. United States*, 952 F.3d 1311, 1319 (Fed. Cir. 2020).  Accordingly, this Court will follow the weight of Missouri caselaw.

22

In *Schuermann*, the deed at issue contained no references to the conveyance as being *for* right of way.  Rather, the deed set forth the grantor's intent to "grant, bargain and sell, convey and confirm . . . [a] strip of ground *or right of way*" unto the railroad.  *Schuermann*, 436 S.W.2d at 667 (emphasis added) (capitalization removed).  Although the Missouri Supreme Court acknowledged that use of term "or" could create ambiguity, such ambiguity was clearly resolved by the additional references in the deed to the primary conveyance as a "right of way."  *Id.* at 668 (noting that "the recital and metes and bounds description" referred to "said second party's *right of way*" and emphasizing the certification that such description "correctly represents the *Right-of-way* described in [the] deed" (emphases added)).  As a result, *Schuermann* determined that the deed conveyed an easement.  *Id.* at 668–69.

Relying in part on *Schuermann*, the Missouri Court of Appeals in *Jordan v. Stallings*, 911 S.W.2d 653, 658 (Mo. Ct. App. 1995), reached the same conclusion for a deed that similarly did not expressly state that the conveyance was "for right of way."  Rather, the court stated that the deed conveyed an easement because, among other reasons, "[t]he subject of the conveyance was referred to twice as a *right of way*."  *Id.* (emphasis in original); *see also id.* ("[T]he interest conveyed was that of a right of way which results in the conveyance of an easement only.").  The same logic applies here, as the Brinkmeyer deed conveyed a secondary interest in "right of way" for the 50-foot strip.  ECF No. 61-1 at 16.  Such an interest is an easement.

With this context laid, the Court turns to the primary conveyance.  As the Court held in *Abbott*, a deed's description of a secondary conveyance as "*extra* right of way" impliedly refers to the primary conveyance as being a transfer of the same type of property interest—*i.e.*, an easement.  *See* 162 Fed. Cl. at 461.  "Extra" and "additional" are synonymous.  *See Extra*, *Oxford English Dictionary*, *supra*.  Thus, the Brinkmeyer deed's description of the interest conveyed in the second

23

part as one of "additional right of way" indicates that the first part conveyed a right of way—and consequently an easement—as well. Accordingly, the Court grants Plaintiffs' request for partial summary judgment on Claim 4 and denies the Government's corresponding partial summary judgment request.

### E.      The Deed Underlying Claim 5 Conveyed an Easement.

Claim 5 treads similar ground to Claim 4. The primary conveyance and description of land in the Intelmann deed (86-168) contain no reference to "right of way." *See* ECF No. 61-1 at 18 (conveying "[a] strip of land one hundred (100) feet wide" and providing the property's description). The deed's secondary conveyance then grants "such additional strips or parcels of land" for the "purpose of cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described aforesaid." *Id.* The deed further describes the secondary conveyance as "a strip fifty feet [wide] on each side and adjacent to the right of way aforesaid." *Id.* (alteration in original).

Like Claim 4, the Intelmann deed conveyed easements in both the primary and secondary conveyances. Beginning with the second part, the additional "strips or parcels of land" were expressly conveyed "for the purpose of cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described" in the first part. *Id.* This conveyance limited "the use of the grant for railroad purposes," and thus under Missouri law, resulted in an easement. *Brown*, 152 S.W.2d at 652. Although the primary granting clause referred only to a strip of land 100-feet wide (not a right of way), the second clause describes that strip as "the right of way aforesaid." ECF No. 61-1 at 18. As noted above, references in the deed to the land conveyed as a "right of way" support a finding that only an easement was conveyed to the railroad. *See Schuermann*, 436 S.W.2d at 668; *Jordan*, 911 S.W.2d at 658.

24

That the Intelmann deed's reference to the primary conveyance as a right of way was not in the primary granting clause itself is of no moment. In *City of Columbia v. Baurichter*, 729 S.W.2d 475, 477 (Mo. Ct. App. 1987), the Missouri Court of Appeals reviewed a series of deeds containing primary granting clauses that conveyed "[a] strip, belt or piece of land one hundred feet in width, the same being fifty feet on each side of the center line" of the proposed railroad. Following the metes and bounds description in the granting clause, the deed first in time referred to the land conveyed as "said road." *Id.* In the habendum clause of the second deed in time, the deed described the land conveyed as "this right of way." *Id.* (capitalization removed). In conjunction with the third deed in time, which apparently stated nominal consideration (thus conveying an easement under Missouri law), the court held that "[t]he language of the three deeds, though ambiguous, indicates the purpose thereof, i.e., railroad right of way."[6] *Id.* at 480. Here too, while the primary conveyance of the Intelmann deed does not state that it is a "right of way" or "for right of way," Missouri case law skews in favor of finding the reference in the secondary conveyance to "the right of way aforesaid," ECF No. 61-1 at 18, as indicative of a limitation on the legal interest primarily conveyed.

Accordingly, the Court grants Plaintiffs' request for partial summary judgment on Claim 5 and denies the Government's corresponding partial summary judgment request.

---

[6] If a deed's reference(s) to "right of way" are ambiguous as to what interest is conveyed, Missouri courts have recognized the preference under Missouri law to interpret grants to railroads as easements. *See Dorothy Moore*, 58 Fed. Cl. at 136; *Miller v. United States*, 67 Fed. Cl. 542, 547 (2005) (recognizing "a preference in Missouri law for construing ambiguous instruments to railroads as easements").

**F.      All Three Deeds Underlying Claim 6 Conveyed Fee Title to the Railroad.**

Claim 6 concerns three deeds: the Inselman deed (86-29), Inselmann deed (84-600), and Bockelman deed (88-87).  *See* ECF No. 57 at 11–12; ECF No. 58 at 12–13.  Plaintiffs argue each deed grants only an easement; the Government argues each deed grants fee simple title.  The Government has the better reading.

The Inselman deed (86-29) conveyed "[a] strip of land one hundred (100) feet wide."  ECF No. 61-1 at 20.  Like the Mehrtens deed in Claim 1, it states: "And also the right of entry across adjacent land of the undersigned for purposes of construction of said railroad[.]"  *Id.*  For the same reasons that the primary conveyance in the Mehrtens deed was for a fee simple interest, the primary conveyance here was in fee as well.  Use of the phrase "[a]nd also the right of entry" indicates that the grantor conveyed an additional interest—here, an easement for entry over the grantor's lands for the purpose of constructing the railroad—beyond the primary interest conveyed.  The "right of entry" granted in the secondary conveyance does not purport to refer back to the primary conveyance.  Thus, the Inselman deed primarily conveyed fee title.  *See Abbott*, 162 Fed. Cl. at 457, 463; *Schuermann*, 436 S.W.2d at 668–69.

The Inselmann deed (84-600)—which, the Government notes, covers sidetracks to the land conveyed in the Inselman deed (86-29), *see* ECF No. 58 at 12—conveyed "[a] strip of land one hundred and fifty [150] feet wide on the south side of and parallel with the right of way of the route and line" of the Railroad, as well as a strip "on the North side" of the "right of way of the route and line of the railroad."  ECF No. 61-1 at 22 (second alteration in original).  The references to "right of way" in this deed appear to relate exclusively to the tract sold in the Inselman deed (86-29) and are used only to describe the boundaries of the sidetracks.  Importantly, the conveyance in the Inselmann deed (84-600) identifies "[a] strip of land," does not convey a "right

26

of way," and does not limit the purpose of the conveyance.  According to Missouri law, such a deed conveys fee simple title.  *See Abbott*, 162 Fed. Cl. at 457; *Brown*, 152 S.W.2d at 652; *Schuermann*, 436 S.W.2d at 668–69.  And because the Inselman deed (86-29) clearly encompasses the full agreement of the parties, the Inselmann deed's (84-600) references to the Railroad's interest as a "right of way" cannot limit the quantum of title conveyed in the separate, earlier Inselman deed (86-29) covering the main track.  *See City of Columbia*, 729 S.W.2d at 479 (noting that, under Missouri law, "[t]he first step in resolving the question of ownership entails applying the cardinal rule of interpretation to the *first deed*," *i.e.*, determining the intent of the grantor by "examining the words *within the four corners of the deed*" (emphases added)); *J.B. Colt*, 44 S.W.2d at 6 (discussing the parol evidence rule).

The Bockelman deed (88-87) contains functionally identical language.  The deed conveyed "[a] strip of land one hundred and fifty [150] feet wide parallel with, adjacent to and on the South side of the right of way of the route and line" of the Railroad, as well as additional strips of land on the north and south sides "parallel with and adjacent to the right of way of the railroad."  ECF No. 61-1 at 24 (second alteration in original).  Like the Inselmann deed (84-600), this language conveyed fee simple title to the strips of land for sidetrack, *see Abbott*, 162 Fed. Cl. at 457; *Brown*, 152 S.W.2d at 652; *Schuermann*, 436 S.W.2d at 668–69, and any reference to "right of way" was merely used to describe the boundaries of the sidetracks.

Accordingly, because all three deeds conveyed fee simple title to the Railroad, the Court grants the Government's request for partial summary judgment on Claim 6 and denies Plaintiffs' corresponding partial summary judgment request.

### G.     Both Deeds Underlying Claim 7 Conveyed Fee Title to the Railroad.

Claim 7 concerns the first Willis deed (86-159) and second Willis deed (86-243).  *See* ECF No. 57 at 12, 12 n.2; ECF No. 58 at 13–14.  Plaintiffs do not dispute that the first Willis deed (86-159) granted fee simple in a strip of land underlying the rail line of the Railroad.  *See* ECF No. 59 at 11.   Indeed, that conclusion is clear: the deed grants a strip of land, provides the property description, and contains no mention at all of any right of way or of limiting the use of the land to a specific purpose.  *See* ECF No. 61-1 at 26; *see also Abbott*, 162 Fed. Cl. at 457, 463; *Brown*, 152 S.W.2d at 652; *Schuermann*, 436 S.W.2d at 668.

The parties, however, dispute the quantum of title conveyed in the second Willis deed (86-243).  Plaintiffs argue that the deed's references to a "right of way" in the property description— *e.g.*, "[a] strip of land . . . joining the North side of the right of way of the [Railroad]," ECF No. 61-1 at 28—automatically limit the conveyance in this deed to an easement.  *See* ECF No. 57 at 12; ECF No. 59 at 11.  Plaintiffs are incorrect.  Like the Inselmann and Bockelman deeds in Claim 6, the "right of way" to which the property description in the second Willis deed (86-243) refers is, as the Government points out, the strip of land that the first Willis deed (86-159) conveyed to the Railroad.  *See* ECF No. 60 at 8.  The second Willis deed (86-243) thus clearly uses the phrase "right of way" to describe a specific tract of land—*i.e.*, the tract that had already been conveyed in fee simple in the first Willis deed (86-159).  The deed did not use "right of way" to describe the property being conveyed in the second Willis deed (86-243), but rather to identify its boundaries in relation to the main track.  Thus, the deed contains no indication that the grantor sought to convey a right of way or to limit the purpose of the conveyance.  *See Abbott*, 162 Fed. Cl. at 457; *Brown*, 152 S.W.2d at 652; *Schuermann*, 436 S.W.2d at 668.  The deed conveyed fee simple title.

Accordingly, the Court grants the Government's request for partial summary judgment on Claim 7 and denies Plaintiffs' corresponding partial summary judgment request.

## H.    The Deed Underlying Claim 8 Conveyed an Easement.

Claim 8 concerns the Idel deed (25-632), which conveyed "[a] strip of land one hundred (100) feet wide" to the Railroad with no indication in the granting clause that the interest conveyed was a "right of way" or was "for right of way." ECF No. 61-1 at 30. However, in the clause following the metes and bounds description, the deed states that August Idel joined the deed "for the purpose of releasing the above described right of way from [the] Deed of Trust held by him on above described tracts of land." *Id.* (alteration in original).

As is true for some of the claims above (*e.g.*, Claims 4 and 5), this description of the land conveyed as a right of way limits the legal interest conveyed and results in an easement. *See Schuermann*, 436 S.W.2d at 668; *Jordan*, 911 S.W.2d at 658; *City of Columbia*, 729 S.W.2d at 480. Accordingly, the Court grants Plaintiffs' request for partial summary judgment on Claim 8 and denies the Government's corresponding partial summary judgment request.

## I.    The Deed Underlying Claim 9 Conveyed Fee Simple Title.

Claim 9 concerns the Diestelkamp deed (27-40). ECF No. 57 at 13–14; ECF No. 58 at 15–16. The Diestelkamp deed conveyed "[a] strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line of the Railroad[.]" ECF No. 61-1 at 32. The deed continued: "This deed is intended to take place of former deed of right of way, executed by said Henry Diestelkamp and wife to said Railroad Company, made in 1888." *Id.* Like the Meyer deed for Claim 2, the Diestelkamp deed conveyed fee simple title to the strip of land. The only use of the phrase "right of way" relates to the description of the "former deed," which the Diestelkamp deed was "intended to take place of." *Id.*

29

Plaintiffs argue that an intent to "take place of" a former deed suggests that the current deed must intend to limit the quantum of title in the same way as the former deed. *See* ECF No. 57 at 13–14. But a legal instrument can replace an earlier legal instrument by changing the substantive rights or obligations previously established in that instrument. Indeed, there is arguably no reason to create a new instrument to "take place of" an earlier one without a need or desire to modify certain central, substantive elements of the prior deed or contract. Plaintiffs have not provided any indicia that the parties intended to read into the Diestelkamp deed the limitation on the quantum of title conveyed in the previous right of way deed. For example, the Diestelkamp deed does not similarly describe itself as a "right of way deed." It is a warranty deed, which is indicative of fee simple. *See* ECF No. 61-1 at 32; *Schuermann*, 436 S.W.2d at 668 (noting that "[r]ailroads may hold, purchase, or convey the fee in land when the acquisition is by general warranty deed without any restriction on the quantum of title conveyed and for a valuable consideration").

Accordingly, because the conveyance in the deed presented did not convey a right of way and contains no language limiting the use of the land conveyed to any railroad purposes, the Diestelkamp deed conveyed fee title. *See Abbott*, 162 Fed. Cl. at 457, 463. The Court therefore grants the Government's request for partial summary judgment and denies Plaintiffs' corresponding partial summary judgment request.

### J.    The Primary Conveyances in the Deeds Underlying Claim 10 Were for Fee Simple Title.

Claim 10 concerns two deeds: the Holzer deed (24-462) and Hoskins deed (24-461). *See* ECF No. 57 at 14–15; ECF No. 58 at 16–17. The Holzer deed conveyed "[a] strip of land one hundred (100) feet wide, having a uniform width of fifty (50) feet on each side of the center line

of the [R]ailroad[.]" ECF No. 61-1 at 34. The deed continued: "The grantors further convey the right of way across a strip of land . . . ." *Id.* The deed also conveyed, "for the purpose of cuttings and embankments necessary for the proper construction and security of said railroad across the tracts of land described aforesaid, such additional strips or parcels of land as may be necessary for that purpose[.]" *Id.* Finally, the deed conveyed "also the right of entry across adjacent lands of the undersigned for purposes of construction of said railroad[.]" *Id.* The Hoskins deed is very similar to the Holzer deed. It primarily conveyed "[a] strip of land," and "also the right of entry across adjacent land of the undersigned for purposes of construction of said railroad with free and undisturbed ingress and egress to said railroad." *Id.* at 36.

The Government does not dispute that the secondary and tertiary, where relevant, interests conveyed in the deeds were easements. *See* ECF No. 58 at 17. Rather, the parties dispute whether the primary conveyance in each deed—for "[a] strip of land"—was in fee. *Id.* at 16; ECF No. 57 at 14–15. Under Missouri law, the Government is correct.

The primary conveyances in these deeds do not mention "right of way" or otherwise limit the quantum of title conveyed. *See Abbott*, 162 Fed. Cl. at 457; *Schuermann*, 436 S.W.2d at 668–69; *Danny Moore*, 991 S.W.2d at 685–86. Nor do the secondary and tertiary conveyances appear to refer to the primary conveyances at all, much less in such a manner as to indicate that the primary conveyances also granted easements. For example, the secondary conveyance clearly conveys a right of way, but it is across a separate 25-foot strip of land where a road was then located. *See* ECF No. 61-1 at 34. Moreover, like Claims 1 and 6, the tertiary conveyance of "also the right of entry" across adjacent land does not limit the quantum of title conveyed in the primary portion of the deed. The deeds here primarily conveyed fee title.

31

Accordingly, though the Court holds that the second and third conveyances in the Hoskins and Holzer deeds are easements, the Court grants the Government's request for partial summary judgment on Claim 10 and denies Plaintiffs' corresponding partial summary judgment request because the primary conveyance was for fee title.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 57) is **GRANTED IN PART** and **DENIED IN PART**, and the Government's Cross-Motion for Partial Summary Judgment (ECF No. 58) is **GRANTED IN PART** and **DENIED IN PART**.  The parties shall file a Joint Status Report **by July 17, 2026**, advising the Court of the issues remaining for resolution in this case and proposing a schedule for further proceedings.

**SO ORDERED.**

Dated: June 26, 2026                                 */s/ Kathryn C. Davis*
                                                     KATHRYN C. DAVIS
                                                     Judge

32